## QUESTIONS OF NEGLIGENCE WHERE REPAIRER WAS INJURED BY THE TILTING OF A CAR.

[Circuit Court of Lucas County.]

ANNA S. KRACHT, ADMINISTRATRIX OF THE ESTATE OF WILLIAM F. KRACHT, DECEASED, v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

Decided, October 10, 1903.

*Negligence—Where a Car Repairer was Fatally Hurt—By the Tilting of a Car Under which he was at Work—Circumstances of Injury—Constitute Issues of Fact Rather than of Law—Master and Servant—Railways.*

1. The master is bound to use ordinary care to provide a reasonably safe place for his servants to work, and to establish reasonable rules or regulations whereby the servant may be guarded and protected against danger and injury incident to the performance of his duties. Hence, where a servant is ordered, either by general or special direction, by the foreman of his department to repair a car, in which work it is necessary to raise the same and place it on supports for the purpose of removing the trucks, and while engaged in such repair it is necessary for the servant, along with others, to work underneath the car as thus raised, and sit upon the ground at one end thereof with his eyes directed to the floor of the car above him in order to see what he is doing, and while he is so at work other servants are also engaged in the same work at the other end of the car. and in the course of making the repairs it becomes necessary to have such other end of the car raised and the supports thereunder taken out, and while engaged in his work in such position the servant could not see and did not know what was going on at such end, the master is charged with knowledge of the dangerous situation and the known and apparent danger to the servants by the raising and falling of the car, and it is a question for the jury whether or not it is the master's duty, while such work is going on, to have some one from under the car, or provide some other method, to give timely notice or warning to the workmen under the car that the same was about to be raised. In such case the master may be liable for the injuries sustained by the servant by reason of the car falling upon him, notwithstanding the combined negligence of fellow servants in raising the car.

2. It was not negligence as a matter of law for a servant, who was experienced in such car repairing, to remain at his work under the

car unless he had notice that the car was about to be raised; but where there was a conflict in the evidence as to such notice, the question as to whether or not the servant was negligent and the question as to the duty of the master under the circumstances to make rules or other provisions for giving notice or warning of what was about to be done by the workmen at the other end of the car should have been submitted to the jury; and it was improper for the court to take the case from the jury and direct a verdict for the defendant.

HULL, J.; HAYNES, J., and PARKER, J., concur.

This action was brought in the court of common pleas by the plaintiff in error, who was plaintiff in the court below, as administratrix of her husband's estate, to recover damages for the death of her husband, caused—as claimed by the plaintiff—by and through the negligence of the defendant railway company. At the conclusion of plaintiff's testimony, on motion of the defendant, the common pleas court directed the jury to return a verdict in favor of the defendant. After the overruling of a motion for a new trial, judgment was entered on that verdict in favor of the railway company, and it is to reverse that judgment that a petition in error was filed in this court.

The case raises the question of the duty of the railway company in the premises and whether the evidence offered by the plaintiff showed any negligence on the part of the railway company; and, further, whether it showed that the deceased was guilty of such contributory negligence as would bar a recovery by his administratrix for his death.

The accident occurred in September, 1901, at which time Kracht was in the employ of the railway company as a car repairer, and had been employed in such work for some time prior to the accident. He was a man of ability and of experience in the performance of that kind of work; there is no claim that he was inexperienced. It was a portion of his duties to aid in the repair of cars which were in the yards of the company; and, for the purpose of repairing these cars, there was a sidetrack upon which such cars were run and left standing near Air Line junction in the city of Toledo, and after the cars were run upon this track, if they needed repairs that necessitated the taking of the trucks out from under them, they were "jacked

up," as it is called, and the body of the car was set on heavy barrels, and after the trucks had been taken out, if repairs were necessary to the bottom of the car, men would go under the car to make those repairs. In this case Kracht and three other men were directed to make repairs upon a car. The car was jacked up in this way—Kracht assisting in doing it—and after the body of the car had been raised sufficiently, both ends of the car were set upon heavy barrels—a barrel under each corner, and timbers extended across the barrels—and thus the body of the car rested and the trucks were taken out. There was something out of repair underneath this car, the nuts on the bolts needed tightening, and also something out of repair at one end, and some apparatus was out of repair, situated about the middle of the car underneath. After they got the car upon the barrels, Kracht and a man named Buck, another employe, went under the car to work, near the west end of the car, perhaps two or three feet from the end. Two other men were working near the middle of the car, repairing the truck apparatus. After they had been at work for some time—having commenced to work in the morning—the foreman came to them and inquired whether they were going to get the car "fixed" that day, and some of the men said they thought they would; but the time went on and they did not get it finished, and the foreman came over again, and for some reason it seemed to be desirable to have the car repaired that day, so the foreman in the afternoon sent three other men to aid in the repair of the car; had told them to assist, saying to them, and perhaps to all of them, to be careful not to get hurt. These three men first repaired the end board of the car, at the west end, which work occupied them but a few minutes. After that they went to the east end of the car—which had been also jacked up and was resting on barrels at each corner—and, procuring jacks, proceeded to raise that end of the car, Kracht and Buck being at work under the other end of the car, which was thirty-five to forty feet long. Perhaps only two of the men went to the east end. After they had jacked up the car at the east end and had taken out the barrels and timbers, according to the weight of the testimony, they then undertook to put the truck under the body of the car, and just

as they had gotten a very little of it under the body of the car, for some reason, which is not very clearly shown in the record, the car slid, or "slewed," as stated by some of the witnesses, to the north. The record does not state just how many feet this car was from the ground, but it was so near that the men who were working underneath it sat on the ground and did their work of tightening the bolts and the other work in that way; it was probably about four feet from the ground. The car, just as they got the edge of the trucks under it, slid to the north; the northwest corner of it, near where Buck and Kracht, the decedent, were working, also sliding to the north. These four men were still all working under the car. Kracht noticed that the car was falling, and called out to "Look out! The car is falling," or that in substance. Buck, who was working at his side, leaped to the south and the two men near the middle sprang out, and those three escaped. Kracht undertook to escape towards the north, but the car slid in that direction and fell upon him, and he was so injured that he died within two or three days afterwards.

It was claimed by the plaintiff in her petition and upon the trial of the case, that Kracht was in the line of his duty at this time, and that without any negligence on his part he was injured in the manner described, and that the railway company was negligent and liable on account of that negligence, which is stated in her petition as follows:

"That the defendant well knew, or by ordinary care could have known, that decedent and its other employes would necessarily work under said and other cars while so resting on said barrels, yet defendant was careless and negligent in the premises, in that, that it failed and neglected to make reasonable provision and regulations for the protection of decedent and its other employes against the danger of having said car raised, moved, or in any wise disturbed while said car was resting on said barrels, and while the decedent and its other employes were working thereunder, and in failing to provide that notice or warning should be given to those under said car when the same was about to be raised, moved, or in any wise disturbed, and in failing to make any reasonable provision for decedent's protection while he was at work under said car, and to guard him against the danger of said car being thrown upon him."

The defendant denied all allegations of negligence and alleged that if the decedent sustained any injury by reason of the negligence of any one other than himself, it was the negligence of fellow servants—co-employes in the same common service—for which the defendant could not be held responsible, and set up further, that whatever injury he had sustained was on account of his own negligence. So that the question presented is, whether the evidence which was offered by the plaintiff, tended to show negligence on the part of the railway company, or failure of duty on the part of the railway company towards this employe in any respect; and, whether, if this were true, there was evidence which showed that the decedent was guilty of contributory negligence which would prevent a recovery? It is claimed by the plaintiff, as set forth in her petition, that it was the duty of the railway company to protect the decedent, Kracht, against such an accident as this, while he was under the car at work; that either the foreman or some one should have been on the ground to notify him in case the car was raised at the other end, to notify him that that was being done, so that he might get out, and that it was the duty of the railway company to have provided some rule or regulation requiring such notice to be given to men at work under cars in this manner, before the car or any part of it was raised; and it is claimed that the failure to provide either of these things was negligence.

It is claimed by the railway company that this was an ordinary piece of work, the repairing of this car, a very common piece of work; that Kracht had been engaged at such work for a long time; that the fact that the car might possibly fall was known to him and that the company was not under obligation to have such rules as these, or to have any one posted outside of the car to call out to the men underneath the car in a case of peril of this kind; and it is claimed further that this was one of the assumed risks of the duty in which Kracht was employed, he knowing the danger when he did that work; and, further, that Kracht himself was guilty of contributory negligence in this, as claimed, that the record discloses that Kracht knew that these men who came to assist had gone to the other end

of the car, and that while there they would raise the car, jack it up and take the barrels out and put the trucks under.   It is claimed that Kracht had full knowledge of this from what was said there and done there, aside from his knowledge of the work; and that he voluntarily remained under the car with this knowledge, and therefore assumed the risk himself and took the chances of injury, and, instead of getting out from under the car or keeping watch to see when the men undertook to put the trucks under the car and getting out from under the car then for his safety, it is said that he remained under, knowing that this was being done, and that he therefore assumed the risk and contributed to whatever injury he suffered.

The court found under the evidence offered by the plaintiff that plaintiff could not recover; that there was no evidence tending to show liability on the part of the railway company; that there was no duty resting on the railway company to make any such rules or regulations or to keep watch as claimed by the plaintiff.

We have read the record through very carefully and it appears that when these three men left the west end of the car, according to some of the testimony offered, some one said that they would go to the other end of the car and do what was necessary to be done there; and that was heard by some of the men—perhaps by some of the men working under the middle of the car—or one of them; and it is claimed, on the question of contributory negligence, that Kracht must have heard this and known it.   But Buck, who was working by the side of Kracht and only a few feet from him, testified that no notice was given to him that the men at the other end of the car were about to jack it up and put the trucks under, that he had no knowledge that they were about to do anything of that kind, and that he did not hear anything said by the men about going to the end of the car to do anything of the kind; and the weight of the testimony is that it was customary when work of that kind was done at the end of the car, with men under it, for the men to get out from under the car; and Buck testified that if he had known they were about to do this or anything else of this kind at the other end of the car, he would have got out and not have

remained under it. Kracht is dead and can not testify as to whether he knew what these men were doing at the other end of the car or not. But the man who was at work beside him testified that he knew nothing about that; that he had no notice or knowledge, and that, so far as he knew, Kracht had no knowledge. They were both at the time with their backs towards the east end of the car where this work was going on, sitting on the ground and looking up at the floor of the car over their heads, and Kracht was engaged in tightening nuts on some bolts directly over his head, looking at them and intently engaged at his work. It seems to us that it can not be held as a matter of law that Kracht was guilty of negligence contributing to his injury in not knowing or seeing what was going on at the other end of the car. We think that we could not, and ought not as a matter of law, to hold that Kracht had knowledge of what was going on there; that was a question to submit to the jury, under all the circumstances. If the jury should find that he did have knowledge, and staid under the car, taking his own risk, the court could not say that the jury were not warranted in so finding. But there was the evidence of Buck tending quite strongly to show that he had no such knowledge or notice.

As to the duty of the railway company, whether there was any duty imposed upon it to care for him and to guard him against such injury which he was under the car, or to have a rule of some kind to provide for this—the general rule, well established, is that the employer is bound to furnish his employes a reasonably safe place in which to work, and bound to exercise ordinary care in that respect, and that the employe does not assume the risk consequent upon the failure of the employer to perform this duty. The question here is whether there was any evidence tending to show that the railway company had failed in its duty to exercise ordinary care in furnishing a reasonably safe place for Kracht to work. He was directed by the foreman—either by special or general direction—to repair this car. In order to do so it was necessary for him to go beneath the car; it was necessary to jack up the car as was done. This car weighed many tons, and to do this work properly it was necessary for Kracht to sit down on the ground under the

car with his eyes directed towards the floor above him in order to see what he was doing; and while he was in that position he could not see or know fully what was going on at the other end of the car. It was necessary some time in the course of this work to have the other end of the car raised and these barrels taken out and the trucks put under. All this was known to the railway company and its officers and foreman. A Mr. Bay was the foreman, or assistant foreman, immediately in charge of this work. He was in the yard, or about there, but was not on the ground at this car when the accident occurred. He had directed these three men to go to this car and aid in the performance of this work, and knew that in the doing of that work all these things would have to be done. Knowing the position in which Kracht and the other men were, he must be presumed to know the danger of the car falling upon them in case the men undertook to move the car at one end while the men were under the car. The evidence shows that nobody had ever been hurt in this yard in this way before, but it does not show that cars had not fallen in this manner before, but it tended to show that the men always got out from under the car before anything of this kind was done.

The leading case of *Lake Shore & Michigan Southern R. R. Co.* v. *Lavalley*, 36 O. S., 221, prescribes the duty of the railway company where an employe is put to work in a place of peril. The second paragraph of the syllabus in that case is:

"It is the duty of a railroad company to make such regulations or provisions for the safety of its employes as will afford them reasonable protection against the dangers incident to the performance of their respective duties."

And again, in the syllabus:

"That it was the duty of the foreman in putting the hand to work under the car to use reasonable care to protect him, while thus engaged, from the danger arising from the switching of cars and the making up of trains on the same track; and for an injury resulting from the want of such care, the company is liable."

This was a case, as is well known, where a man was put to work under a care in a yard where they were moving cars, and

other cars were liable to run into this car, and while the man was there at work, another car was run into the car that Lavalley was working under and he was hurt—Lavalley being a car repairer, and it was held that the railroad company was liable. The whole question is discussed fully in the opinion.

Another case bearing somewhat on this same question is found in 37 O. S., 549 (*Railway Co.* v. *Henderson*). This is the syllabus:

"Where the superintendent of a railroad company has made an order as to the management of a particular train, which order will be reasonable or unreasonable according to the circumstances under which it is to be enforced, the question whether in any particular case such order is to be deemed reasonable or unreasonable is a question of mixed law and fact to be determined by the jury under proper instructions.

"Where an action is brought against a railroad company by one of its employes to recover damages for personal injuries sustained by the enforcement of an order made by the superintendent of the company, as to the management of a particular train, which order was unreasonable, and the enforcement of the same was dangerous to such employe, the fact that the negligence of a fellow servant of the injured person, while executing such order, contributed in producing the injury, affords no defense to the action."

As is said in some cases, rules may be required, and are sometimes required, in the exercise of ordinary care, and other precautions may be necessary for the purpose of protecting employes against the negligence of fellow servants. As in the Lavalley case, it may be said that the employes who ran the car against the one under which Lavalley was working, were negligent, but this did not preclude a recovery.

In 38 O. S., 389 (*Dick* v. *R. R. Co.*) the Supreme Court say, in the syllabus:

"As between employes of a railroad company whose duty it is to repair its track while trains are using the same, and the company and its representatives, who are engaged in running trains over the same, where the trackmen are so employed, it is the duty of the latter, as far as is practicable, to adopt such precautions as will guard its employes on the track from dangers incident to their employment."

These questions are discussed in the opinion and in the La-valley case referred to and cited with approval. These are cases where an employe was injured by a moving car or a moving train. In our judgment the principle is the same where an employe under a car is injured by reason of the car being moved or struck in any other way, if such a thing was liable to happen; it makes no difference whether it was a moving train or any other object or person that moved the car, if the man was under it, or whether it was thrown down, as this was, or knocked over, if it was something that was liable to happen, if it was a thing that was imminent and pending while the man was under the car.

The Murphy case, reported in 50 O. S., 135, is in point. The man in that case who was killed was put at work upon a railroad track which was straight with the view unobstructed, and while he was at work there a train came along, struck and killed him. It was claimed that the railroad company should have made some provision to protect him while at work; should have had a rule requiring notice to be given, or should have had some one there whose duty it was to warn him of the approach of trains. The Supreme Court held, as stated in the syllabus:

"It is the duty of a railway company to afford reasonable protection to its employes against dangers incident to their work. And if under the circumstances of this case a rule providing for warning was necessary, and by the exercise of reasonable care on the part of the company that necessity could have been foreseen, it was the duty of the company to prescribe such rule. Whether it ought to have so provided or not, was a question for the jury."

Upon the question of contributory negligence, the court say, in the last paragraph of the syllabus:

"The evidence as to contributory negligence on the part of deceased made a case which, at least, was doubtful, and about which different minds might differ as to the proper inference to be drawn. Such a question can not properly be determined by the court as matter of law, and should be submitted to the jury."

The question is fully discussed in the opinion. The court say, on page 143 (Judge Spear delivering the opinion):

"Negligence is always an inference from facts put in evidence, as contrasted with a fact which is the subject of direct proof. The proof disclosed facts calling for logical, as distinct from legal, deduction. Where that is the case the question is for the jury and not for the court. And, whether or not, under the circumstances of the case at bar, the company should have anticipated the necessity and exercised proper precaution, by prescribing a rule requiring warning, was clearly a question for the jury. Of like character was the question of contributory negligence. As matter of law the court could not say that it was not the duty of the company to provide any means to warn men in that position of approaching danger, nor that, as matter of law, the deceased was negligent because he did not interrupt his work sufficiently to protect himself from approaching trains."

It seems to us that the Murphy case was a stronger one for the railway company than the case at bar. Murphy, as I have said, was at work on a straight track, and had an unobstructed view of the train which came down the track in broad daylight and struck him, but the Supreme Court held that he could not be presumed to have seen the train or be guilty of contributory negligence. In the case at bar, Kracht was seated upon the ground under the car, with his eyes upon the floor of the car above him, intent upon his work, and the acts which resulted in the car falling upon him were going on at the east end of the car, behind him. And it seems to us that under the rule laid down in the Murphy case the court could not say that Kracht was guilty of contributory negligence, nor that the railway company was not guilty of any negligence in the premises. It is clear that if there had been some one on the ground to notify the men under the car that this work of raising the car was being done, that they would have gotten out from under the car safely. It is clear that if there had been a rule requiring notice to the men engaged under the car to get out whenever work of this kind was commenced, if the rule had been complied with, Kracht would have been saved. Whether ordinary care required such a provision or rule, requiring the foreman to give the men notice, or requiring some one to do it— whether ordinary care required that—we think was a proper question to submit to the jury. This was not a risk that Kracht

assumed, if it was a danger caused by the negligence of the master, as was said by the Supreme Court in 61 O. S., page 298 (*Van Duzen, etc., v. Schelies*):

"A servant assumes only such risks incident to his employment as will happen in the ordinarily careful management of the business of the master; such as arise from the fault of the master are not assumed, and the servant may recover for injuries therefrom, unless his own fault contributed to the accident."

In Vol. 43, Atlantic Reporter (May 24, 1899, *Rex v. Pullman Car Co.*), Chief-Justice Lore of the Superior Court of Delaware, at the February Term, 1897, in his charge to the jury in a negligence case, uses this language:

"This is a case of master and servant, and the rights, duties and obligations of that relation govern it. The primary duties of the master are—First, to provide a reasonably safe place for the servant to work in or upon; second, to provide him with reasonably safe tools and machinery with which to do his work; third, to employ reasonably competent and careful co-workers and fellow servants; fourth, to promulgate proper rules for the government of such servants, in operating his business, where the extent of that business exceeds the limits of his personal supervision. The servant assumes no risk whatever as to these primary duties of the master when he accepts employment; but he does assume all the ordinary risks of the employment, including therein the negligence of his fellow servant."

In Beach on Contributory Negligence, Section 304, the author says:

"Whenever the negligence of the master, united to the negligence of the fellow servant, contributes to the injury, the servant injured thereby may recover from the common employer. The servant will not be held to have taken any chances of negligence on the part of the master, and it is believed that no case has gone so far as to hold that where such combined negligence contributes to the injury the servant may not recover. It would be both impolitic and unjust to allow an employer, under those circumstances, to evade the penalty of his misconduct in neglecting to provide for the security of his servant. Contributory negligence in order to defeat a right of action in such a case must be solely the negligence of the party injured, or the

negligence of a co-employe unmixed with any negligence or default on the part of the common employer."

Upon the general principles involved in this case may be cited: 24 O. S., 83; 41 O. S., 438; 9 C. C. Reports, 340; 38 Nebraska, 488; 59 Northwest R., 950; 113 Mo., 319; and 49 N. Y., 420.

It is clear that the place in which Kracht and the other three men were at work was a place of danger; and it was apparent that in the performance of the work it would be necessary to raise the other end of the car to put the trucks under; and, clearly, while the work was being done it would be very dangerous for these men to remain beneath the car, and if they were left there, they were in danger of being crushed by the falling of the car. It does not require expert testimony to show that where a car is resting upon barrels, as this car was, to lift one end of it with jacks, to put a truck under it, might easily result in the car being tipped or slid over to one side, either by the ground sinking, the car slipping, or by one end being raised higher than the other, or in many ways; and for men to be under the car while that kind of work was going on was extremely perilous. And we are of the opinion that the question whether the railroad company should have made provision to notify Kracht, if anything like this was to be done to the car, was a question to submit to the jury; and whether it was the duty of the railway company, through its foreman, to have either done that himself or to have had some one there in his absence, or a rule was necessary requiring notice to men under the car in a situation of peril such as this, was a proper question for the jury. The question whether Kracht was guilty of contributory negligence was not a question to be determined by the court. The most that can be said is that the evidence on that point was conflicting. The rule in this state is, that where there is any evidence tending to sustain all the material elements of the plaintiff's case, the court can not withdraw the case from the jury, but it must be submitted to them for their decision upon the questions of fact.

We are of the opinion that the court of common pleas erred in directing a verdict for the defendant in this case; that the

motion to that end should have been overruled and the case submitted to the jury upon proper instructions as to the law, by the court. For these reasons the judgment of the court of common pleas will be reversed and the case remanded for a new trial.

*E. L. Twing,* for plaintiff in error.

*E. D. Potter,* for defendant in error.